CHRISTOPHER FROST (SBN 200336)
chris@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
FROST LLP
10960 Wilshire Boulevard, Suite 1260
Los Angeles, California 90024
Telephone: (424) 254-0441

ANNA KING (*Pro Hac Vice* Application forthcoming)
aking@bannerwitcoff.com
KATHERINE LAATSCH FINK (*Pro Hac Vice* Application forthcoming)
kfink@bannerwitcoff.com
CHRISTIAN WOLFGRAM (*Pro Hac Vice* Application forthcoming)
cwolfgram@bannerwitcoff.com
BANNER WITCOFF
71 South Wacker Drive, Suite 3600
Chicago, IL 60606
Telephone: (312) 463-5000

Attorneys for PLAYBOY ENTERPRISES
INTERNATIONAL, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> STELLAR ASSOCIATES INC. d/b/a STELLAR COLLECTIBLES, XANDEBAY LLC, MICHAEL SCHREIBER, THE CARD SHOP d/b/a SCIFI CARDS, and EDWARD WEBB III, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:** <br> (1) **COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 501;** <br> (2) **VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, 17 U.S.C. § 1202;** <br> (3) **TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1);** <br> (4) **TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1125(a);** |

(5)  **TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125(c);**

(6)  **TRADEMARK DILUTION IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 14247;**

(7)  **UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN IN VIOLATION OF 15 U.S.C. § 1125(a);**

(8)  **UNFAIR COMPETITION IN VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200;**

(9)  **COMMON LAW TRADEMARK INFRINGEMENT;**

(10) **COMMON LAW UNFAIR COMPETITION; AND**

(11) **UNJUST ENRICHMENT.**

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, Playboy Enterprises International, Inc. ("Playboy"), for its complaint against Stellar Associates Inc. d/b/a Stellar Collectibles, Xandebay LLC, Michael Schreiber, The Card Shop d/b/a Scifi Cards, and Edward Webb III (collectively, "Defendants") alleges as follows:

## THE PARTIES

1. Playboy is a company organized and existing under the laws of the State of Delaware with a principal place of business at 10960 Wilshire Blvd., Suite 2200, Los Angeles, CA 90024.

2. On information and belief, Stellar Associates Inc. d/b/a Stellar Collectibles ("Stellar") is a corporation organized and existing under the laws of the State of New York with a principal place of business at 8 Wright St., Suite 107, Westport, CT 06880.

3. On information and belief, Xandebay LLC ("Xandebay") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 8 Wright St., Suite 107, Westport, CT 06880.

4. On information and belief, Michael Schreiber ("Mr. Schreiber") is an individual residing in the State of Connecticut, with addresses at, at least, 793 Post Rd E, Apt E3, Westport, CT 06880 and 8 Wright St., Suite 107, Westport, CT 06880. On information and belief, Mr. Schreiber is the Chief Operating Officer and/or Principal of Stellar and Xandebay.

5. On information and belief, The Card Shop d/b/a Scifi Cards ("Scifi") is a corporation organized and existing under the laws of the State of Arizona with a principal place of business at 25506 North 50th Lane, Phoenix, AZ 85083.

6. On information and belief, Edward Webb III ("Mr. Webb") is an individual residing in the State of Arizona with an address at 25506 North 50th Lane, Phoenix, AZ 85083. On information and belief, Mr. Webb is the Chief Operating Officer and/or Principal of Scifi.

## JURISDICTION AND VENUE

7.    This is a complaint for damages and injunctive relief and includes multiple grounds for relief including copyright infringement, violations of copyright management information, trademark infringement, trademark dilution, unfair competition and false designation of origin, and unjust enrichment. This complaint arises under the Copyright Act and the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 101, *et seq.*; the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.* ("the Lanham Act"); the California Business & Professions Code; federal common law; and state common law, including the law of California.

8.    This Court has subject matter jurisdiction over this action pursuant to at least 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

9.    This Court has personal jurisdiction over Stellar because, *inter alia*, Stellar is purposefully and intentionally availing itself of the privileges of doing business in the State of California, including in this District. Among other things, (i) on information and belief, Stellar has had distributors in the State of California, including in Sacramento, San Jose, Anaheim, Santa Cruz, Chino Hills, and Berkeley, (ii) Stellar has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Infringing Products to customers and/or potential customers, including in this District, at least through Stellar's websites, including, for example, http://stellarcards.com/, as well as other websites such as https://xandebay.com/ and https://www.scifi.cards/, (iii) Stellar's tortious acts giving rise to this lawsuit and harm to Playboy have occurred and are occurring in the State of California, including in this District, (iv) on information and belief, Stellar acted with knowledge that its unauthorized use of Playboy's rights would cause harm to Playboy in the State of California and in this District, and (v) Stellar's customers and/or potential customers reside in the State of California, including in this District.

10.     This Court has personal jurisdiction over Xandebay because, *inter alia*, Xandebay is purposefully and intentionally availing itself of the privileges of doing business in the State of California, including in this District. Among other things, (i) on information and belief, Xandebay hosts sellers based in California, including at least sellers in Brea and Cerritos, (ii) Xandebay has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Infringing Products to customers and/or potential customers, including in this District, at least through Xandebay's websites, including, for example, https://xandebay.com/, (iii) Xandebay's tortious acts giving rise to this lawsuit and harm to Playboy have occurred and are occurring in the State of California, including in this District, (iv) on information and belief, Xandebay acted with knowledge that its unauthorized use of Playboy's rights would cause harm to Playboy in the State of California and in this District, and (v) Xandebay's customers and/or potential customers reside in the State of California, including in this District.

11.     This Court has personal jurisdiction over Mr. Schreiber because, *inter alia*, Mr. Schreiber is purposefully and intentionally availing himself of the privileges of doing business in the State of California, including in this District. Among other things, (i) on information and belief, Mr. Schreiber, through Stellar, has had distributors in the State of California, including in Sacramento, San Jose, Anaheim, Santa Cruz, Chino Hills, and Berkeley, (ii) Mr. Schreiber, through Xandebay, hosts sellers based in California, including sellers in at least Brea and Cerritos, (iii) Mr. Schreiber has personally directed the advertisement, marketing, promotion, offers for sale, sales, distribution, manufacture, and/or importation, and continues to direct the advertisement, marketing, promotion, offers for sale, sales, distribution, manufacture, and/or importation of Infringing Products to customers and/or potential customers, including in this District, at least through Stellar's websites, including, for example, http://stellarcards.com/,    and    Xandebay's    websites,    including,    for    example,

https://xandebay.com/, (iv) even if Stellar is now a defunct entity, Mr. Schreiber directed Stellar's tortious acts giving rise to this lawsuit and harm to Playboy, which occurred in the State of California, including in this District, (v) Mr. Schreiber has directed and continues to direct Xandebay's tortious acts giving rise to this lawsuit and harm to Playboy, which have occurred and are occurring in the State of California, including in this District, (vi) on information and belief, Mr. Schreiber acted with knowledge that his unauthorized use of Playboy's rights would cause harm to Playboy in the State of California and in this District, and (vii) Stellar and Xandebay, at Mr. Schreiber's direction, have customers and/or potential customers that reside in the State of California, including in this District.

12.    This Court has personal jurisdiction over Scifi because, *inter alia*, Scifi is purposefully and intentionally availing itself of the privileges of doing business in the State of California, including in this District. Among other things, (i) on information and belief, Scifi has sold the Infringing Products in California, including at trade shows in Palm Springs, San Jose, and Los Angeles, (ii) Scifi has advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continues to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import Infringing Products to customers and/or potential customers, including in this District, at least through Scifi's websites, including, for example, https://www.scifi.cards/, (iii) Scifi's tortious acts giving rise to this lawsuit and harm to Playboy have occurred and are occurring in the State of California, including in this District, (iv) on information and belief, Scifi acted with knowledge that its unauthorized use of Playboy's rights would cause harm to Playboy in the State of California and in this District, and (v) Scifi's customers and/or potential customers reside in the State of California, including in this District.

13.    This Court has personal jurisdiction over Mr. Webb because, *inter alia*, Mr. Webb is purposefully and intentionally availing himself of the privileges of doing business in the State of California, including in this District. Among other things, (i)

on information and belief, Mr. Webb, through Scifi, has sold the Infringing Products in California, including at trade shows in at least Palm Springs, San Jose, and Los Angeles, (ii) Mr. Webb has personally directed the advertisement, marketing, promotion, offers for sale, sales, distribution, manufacture, and/or importation, and continues to direct the advertisement, marketing, promotion, offers for sale, sales, distribution, manufacture, and/or importation of Infringing Products to customers and/or potential customers, including in this District, at least through Scifi's websites, including, for example, https://www.scifi.cards/, (iii) Mr. Webb has directed Scifi's tortious acts giving rise to this lawsuit and harm to Playboy, which have occurred and are occurring in the State of California, including in this District, (iv) on information and belief, Mr. Webb acted with knowledge that his unauthorized use of Playboy's rights would cause harm to Playboy in the State of California and in this District, and (v) Scifi, at Mr. Webb's direction, have customers and/or potential customers that reside in the State of California, including in this District.

14.   Venue is proper in this District pursuant to at least 28 U.S.C. § 1391.

**General Allegations – Playboy's Intellectual Property**

15.   For over 70 years, Playboy's signature content and iconic brand has reached nearly every corner of the globe, influencing art, culture, fashion, and entertainment. Indeed, Playboy, directly and through authorized licensees, has sold its products and services in more than 180 countries. A key piece of Playboy's success and fame stems from its copyrighted images, its famous trademarks, and the products and services marketed and sold using these images and marks, including, among other things, magazines, calendars, jewelry, playing cards, drinkware, and apparel. Playboy has also promoted its brand via targeted and carefully-selected licensing partnerships. As a result of its curated content, targeted licensing partnerships, extensive marketing, and innovative thinking, Playboy is one of the most famous and recognizable brands in the world.

COMPLAINT

16.     Playboy's success and recognition in the United States, and around the world, is attributable, in part, to its famous and distinctive trademarks. Playboy's famous trademarks include PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®, CENTERFOLD®, and the Rabbit Head Design logo shown below, among many others.

**Rabbit Head Design**



17.     Playboy has extensively and continuously promoted and used these trademarks in the United States and California. Through that extensive and continuous promotion and use, Playboy's trademarks have become well-known indicators of the origin and quality of Playboy's entertainment content. Playboy's trademarks also have acquired substantial secondary meaning in the marketplace and have become famous.

18.     As a result of at least Playboy's continuous and exclusive use of its famous trademarks, Playboy's marketing, advertising, and sales of its products and services, and the highly valuable goodwill, substantial secondary meaning, and fame acquired as a result, Playboy owns common law and registered trademark rights in, among others, PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®,

CENTERFOLD®, and the Rabbit Head Design, which consumers have come to uniquely associate with Playboy.

19.    Playboy is the owner of U.S. Trademark Registrations that include the marks PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®, CENTERFOLD®, and/or the Rabbit Head Design. Attached as Exhibit 1 is a list of at least some of the U.S. Trademark Registrations owned by Playboy that include the marks PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®, CENTERFOLD®, and/or the Rabbit Head Design. Copies of the U.S. Trademark Registration Certificates are attached as Exhibits 2–134. Playboy's registered trademarks identified in Exhibits 1-134 are collectively referred to as "Playboy's Registered Trademarks."

20.    Playboy also has common law rights in the PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®, CENTERFOLD®, and the Rabbit Head Design trademarks based on Playboy's use of PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®, CENTERFOLD®, and the Rabbit Head Design in commerce in connection with Playboy's goods and services. Playboy's rights in the PLAYBOY®, PLAYMATE®, PLAYMATE OF THE YEAR®, PLAYBOY'S PLAYMATE OF THE MONTH®, PLAYMATE OF THE MONTH®, CENTERFOLD®, and the Rabbit Head Design trademarks, including the U.S. Trademark Registration Nos. listed in Exhibits 1-134 and its common law rights, are collectively referred to as "Playboy's Trademarks."

21.    Exemplary images of Playboy products and services bearing Playboy's Trademarks are shown below in Illustration 1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| Illustration 1: Exemplary Images of Products and Services Bearing Playboy's Trademarks | |
| --- | --- |
|  |  |
|  |  |

| Illustration 1: Exemplary Images of Products and Services Bearing Playboy's Trademarks |
|---|

 

 

| Illustration 1: Exemplary Images of Products and Services Bearing Playboy's Trademarks | |
|---|---|
|  |  |
|  |  |

**Illustration 1: Exemplary Images of Products and Services Bearing Playboy's Trademarks**



22.    As a result of, *inter alia*, Playboy's exclusive, continuous, and substantial use of Playboy's Trademarks, Playboy's exclusive, continuous, and substantial advertising and promoting of products and services bearing Playboy's Trademarks, and the publicity and attention that has been paid to Playboy's Trademarks, these trademarks have become famous in the United States and have acquired valuable goodwill and substantial secondary meaning in the marketplace, as consumers have come to uniquely associate Playboy's Trademarks as source identifiers of Playboy.

23.    Playboy also owns copyrights, including copyrights in and/or that include photos, including, among others, Copyright Registration Nos. VA 1-975-000, VA 1-943-531, VA 1-943-533, VA 2-232-669, VA 2-159-393, VA 2-001-016, and VA 2-108-649. Playboy's copyright registrations, including at least these exemplary registrations, are referred to as "Playboy's Copyrights."

24.    Copyright Registration No. VA 1-975-000 is titled "Group Registration Photos, Playboy August 2015 Playmate Dominique Jane, Published Jun. 30, 2015; 7 photos." (the "'000 Registration"). The '000 Registration certificate was duly and

legally issued by the U.S. Copyright Office to Playboy on July 7, 2015. Playboy owns the entire right, title, and interest to the '000 Registration. The '000 Registration is enclosed as Exhibit 135.

25.    Copyright Registration No. VA 1-943-531 is titled "Playboy Playmate Jan/Feb 2015 Stephanie Vovas,F_Vovas_P7_9166s2RET_w1" (the "'531 Registration"). The '531 Registration certificate was duly and legally issued by the U.S. Copyright Office to Playboy on February 14, 2015. Playboy owns the entire right, title, and interest to the '531 Registration. The '531 Registration is enclosed as Exhibit 136.

26.    Copyright Registration No. VA 1-943-533 is titled "Playboy Playmate Jan/Feb 2015 Stephanie Vovas, F_Vovas_P5_9598_w2" (the "'533 Registration"). The '533 Registration certificate was duly and legally issued by the U.S. Copyright Office to Playboy on February 14, 2015. Playboy owns the entire right, title, and interest to the '533 Registration. The '533 Registration is enclosed as Exhibit 137.

27.    Copyright Registration No. VA 2-232-669 is titled "November 2020 Playmate Khrystyana Kazakova" (the "'669 Registration"). The '669 Registration certificate was duly and legally issued by the U.S. Copyright Office to Playboy on November 3, 2020. Playboy owns the entire right, title, and interest to the '669 Registration. The '669 Registration is enclosed as Exhibit 138.

28.    Copyright Registration No. VA 2-159-393 is titled "Summer 2019 September 2019 Playmate Sophie O'Neil" (the "'393 Registration"). The '393 Registration certificate was duly and legally issued by the U.S. Copyright Office to Playboy on July 2, 2019. Playboy owns the entire right, title, and interest to the '393 Registration. The '393 Registration is enclosed as Exhibit 139.

29.    Copyright Registration No. VA 2-001-016 is titled "Group Registration Photos, Spring Fever - Brittany Brousseau, Published Apr. 05, 2016; 6 photos." (the "'016 Registration"). The '016 Registration certificate was duly and legally issued by the U.S. Copyright Office to Playboy on April 6, 2016. Playboy owns the entire right,

title, and interest to the '016 Registration. The '016 Registration is enclosed as Exhibit 140.

30.     Copyright Registration No. VA 2-108-649 is titled "July/August 2018 August Playmate Lorena" (the "'649 Registration"). The '649 Registration certificate was duly and legally issued by the U.S. Copyright Office to Playboy on July 2, 2018. Playboy owns the entire right, title, and interest to the '649 Registration. The '649 Registration is enclosed as Exhibit 141.

31.     Playboy owns all rights, title, and interest, including registered copyrights, in and to Playboy's Copyrights, including the exclusive rights to reproduce, display, and distribute Playboy's Copyrights and to bring infringement claims arising out of the unauthorized reproduction, distribution, and display of Playboy's Copyrights.

## General Allegations – Defendants' Unlawful Activities

32.     Defendants have purposefully advertised, marketed, promoted, offered for sale, sold, distributed, manufactured, and/or imported, and continue to advertise, market, promote, offer for sale, sell, distribute, manufacture, and/or import products that violate Playboy's rights, including the rights protected by Playboy's intellectual property. Defendants' Infringing Products are confusingly similar imitations of Playboy's products. Defendants' actions have all been without the authorization of Playboy.

33.     As discussed in more detail below, Defendants are selling infringing trading cards that unlawfully use Playboy's Trademarks and/or Playboy's Copyrights. Defendants are trying to confuse consumers into thinking that its trading cards are associated with, sponsored by, and/or approved by Playboy, when they are not. Defendants' actions are unlawful, and they must stop. Defendants must also compensate Playboy for Defendants' violations of the law.

34.     In February of 2000, Stellar and Playboy entered into a non-exclusive License Agreement for the production and sale of trading cards using Playboy's

intellectual property rights. Specifically, the License Agreement permitted Stellar to use certain Playboy trademarks and copyrights from February 1, 2000 to July 31, 2002 to design, manufacture, advertise, promote, sell, and distribute six sets of non-digital trading cards, referenced as: "Lingerie II," "Wet and Wild I," "College Girls I," "Lingerie III," "Wet and Wild II," and "College Girls II." The License Agreement was signed by Michael Schreiber on behalf of Stellar.

35.    In September of 2002, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, from August 1, 2002 to July 31, 2005.

36.    In September of 2005, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, from August 1, 2005 to September 30, 2006.

37.    In December of 2006, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, from October 1, 2006 to December 31, 2007.

38.    In January of 2008, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, from January 1, 2008 to December 31, 2009.

39.    In January of 2010, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, from January 1, 2010 to December 31, 2012.

40.    In March of 2013, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, from January 1, 2013 to December 31, 2013.

41.    In September of 2013, Playboy and Stellar extended and/or renewed their agreement to allow Stellar to license and sell copies of Playboy's copyrighted images, including on trading cards, giving Stellar the right to release its final set of products on or before March 31, 2014. The last extension of the License Agreement between

1    Playboy and Stellar thus expired on March 31, 2014.

2    42.    Throughout the period between the years 2000 to 2014, Playboy and

3    Stellar entered into various agreements to amend the terms of the License Agreement.

4    Amendments to the License Agreement include changes to payment due dates,

5    addition of trademarks, addition of supplemental products, etc.

6    43.    Nevertheless, in 2024, Playboy discovered that Defendants have

7    designed, manufactured, advertised, promoted, sold, and/or distributed trading cards

8    (the "Infringing Products") using Playboy's Trademarks and Copyrights.

9    44.    Exemplary images of Defendants' Infringing Products are shown below

10    in Illustration 2.



**Illustration 2: Exemplary Images of Defendants' Infringing Products**

**Illustration 2: Exemplary Images of Defendants' Infringing Products**

45.     On information and belief, Stellar, at Mr. Schreiber's direction, operates and/or operated the website http://stellarcards.com.

46.     Playboy has not permitted Stellar, or Michael Schreiber, to design, manufacture, advertise, promote, sell, or distribute trading cards outside of the license agreements described above, and even then, the permissions expired in 2014.

47.     On information and belief, Stellar, at Mr. Schreiber's direction, has designed, manufactured, advertised, promoted, sold, and/or distributed the Infringing Products using Playboy's Trademarks and Copyrights, at least through the websites http://stellarcards.com and https://xandebay.com/, and through other distributors.

48.     Moreover, on information and belief, Stellar, at Mr. Schreiber's direction, has provided copyright management information on the Infringing Products that is false, and/or has distributed or imported for distribution copyright management information on the Infringing Products that is false. For example, on information and belief, Stellar, at Mr. Schreiber's direction, included, at least, the phrases "Daydreams," "Sultry Lace," "Hard Bodies," and "Stellar Collectibles" on Playboy's

copyrighted photographs, and then distributed or imported for distribution this false copyright management information on the Infringing Products.

49.     Additionally, on information and belief, Stellar, at Mr. Schreiber's direction, has intentionally removed or altered Playboy's copyright information, distributed or imported for distribution copyright management information knowing that the copyright management information has been removed or altered without Playboy's authority, and/or distributed or imported for distribution the Infringing Products knowing that copyright management information has been removed or altered without Playboy's authority, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal its infringement. For example, on information and belief, Stellar, at Mr. Schreiber's direction, removed and/or altered the Rabbit Head Design watermark from Playboy's copyrighted photographs, and then distributed or imported for distribution the removed or altered copyright management information.

50.     On information and belief, Stellar produced and sold at least 56 unique sets of trading cards. On information and belief, at least 30 sets of Stellar's Playboy trading cards are unlicensed, unapproved Infringing Products.

51.     On information and belief, Stellar continues to produce and sell new sets of the Infringing Products. Stellar's newest set of Infringing Products, titled "Boobs and Buns," was released in May 2024.

52.     On information and belief, Stellar has distributors in the State of California, including at least in Sacramento, San Jose, Anaheim, Santa Cruz, Chino Hills, and Berkeley.

53.     On information and belief, at all times while Stellar has produced and sold the Infringing Products, Michael Schreiber has been the Chief Executive Officer and/or President of Stellar. On information and belief, Mr. Schreiber willfully, knowingly, and personally participated in these infringing activities, and/or used Stellar to carry out the deliberate infringement of Playboy's Trademarks and

Copyrights. Moreover, on information and belief, Mr. Schreiber had (and continues to have) the right and ability to supervise the infringing activities, and had (and continues to have) a direct financial interest in such activities.

54.     On information and belief, Xandebay, at Mr. Schreiber's direction, operates the website https://xandebay.com/, as well as social media accounts for Xandebay on Facebook, X, Instagram, and YouTube.

55.     Playboy has not permitted Xandebay to design, manufacture, advertise, promote, sell, or distribute trading cards using Playboy's Trademarks or Copyrights.

56.     On information and belief, Xandebay, at Mr. Schreiber's direction, has designed, manufactured, advertised, promoted, sold, and/or distributed the Infringing Products, at least through the website https://xandebay.com/ and Xandebay's social media accounts.

57.     Captures of Xandebay's website and social media accounts showing Xandebay's promotion of the Infringing Products are attached as Exhibit 142. Portions of these captures are also reproduced below:

**Illustration 3: Exemplary Images of Xandebay's Promotion of the Infringing Products on Xandebay's Website and Social Media Accounts**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Illustration 3: Exemplary Images of Xandebay's Promotion of the Infringing Products on Xandebay's Website and Social Media Accounts**





FROST

| **Illustration 3: Exemplary Images of Xandebay's Promotion of the Infringing Products on Xandebay's Website and Social Media Accounts** |
|---|
|  |

58.    Moreover, on information and belief, Xandebay, at Mr. Schreiber's direction, has provided copyright management information on the Infringing Products that is false, and/or has distributed or imported for distribution copyright management information on the Infringing Products that is false. For example, on information and belief, Xandebay, at Mr. Schreiber's direction, included, at least, the phrases "Daydreams," "Sultry Lace," "Hard Bodies," and "Stellar Collectibles" on Playboy's copyrighted photographs, and then distributed or imported for distribution this false copyright management information on the Infringing Products.

59.    Additionally, on information and belief, Xandebay, at Mr. Schreiber's direction, has intentionally removed or altered Playboy's copyright information, distributed or imported for distribution copyright management information knowing

that the copyright management information has been removed or altered without Playboy's authority, and/or distributed or imported for distribution the Infringing Products knowing that copyright management information has been removed or altered without Playboy's authority, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal its infringement. For example, on information and belief, Xandebay, at Mr. Schreiber's direction, removed and/or altered the Rabbit Head Design watermark from Playboy's copyrighted photographs, and then distributed or imported for distribution the removed or altered copyright management information.

60. On information and belief, Xandebay hosts sellers based in California, including, at least, sellers in Brea and Cerritos.

61. On information and belief, at all times while Xandebay has produced and sold the Infringing Products, Michael Schreiber has been the Chief Executive Officer and/or President of Xandebay. On information and belief, Mr. Schreiber willfully, knowingly, and personally participated in these infringing activities, and/or used Xandebay to carry out the deliberate infringement of Playboy's Trademarks and Copyrights. Moreover, on information and belief, Mr. Schreiber had (and continues to have) the right and ability to supervise the infringing activities, and had (and continues to have) a direct financial interest in such activities.

62. On information and belief, Scifi, at Mr. Webb's direction, operates the website https://www.scifi.cards/, as well as social media accounts for Scifi on Facebook, X, Instagram, and LinkedIn. On information and belief, Scifi, at Mr. Webb's direction, sells trading cards online and in-person at trade shows and other locations.

63. Playboy has not permitted Scifi to design, manufacture, advertise, promote, sell, or distribute trading cards using Playboy's Trademarks or Copyrights.

64. On information and belief, Scifi, at Mr. Webb's direction, has designed, manufactured, advertised, promoted, sold, and/or distributed the Infringing Products,

at least through the website https://www.scifi.cards/, via Scifi's social media accounts, and in-person at trade shows and other locations.

65.    Captures of Scifi's website and social media accounts showing Scifi's promotion of the Infringing Products are attached as Exhibit 143. Portions of these captures are also reproduced below:



**Illustration 4: Exemplary Images of Scifi's Promotion of the Infringing Products on Scifi's Website and Social Media Accounts**

**Illustration 4: Exemplary Images of Scifi's Promotion of the Infringing Products on Scifi's Website and Social Media Accounts**





COMPLAINT

66.     Moreover, on information and belief, Scifi, at Mr. Webb's direction, has provided copyright management information on the Infringing Products that is false, and/or distributed or imported for distribution copyright management information on the Infringing Products that is false. For example, on information and belief, Scifi, at Mr. Webb's direction, included, at least, the phrases "Daydreams," "Sultry Lace," "Hard Bodies," and "Stellar Collectibles" on Playboy's Copyrights, and then distributed or imported for distribution this false copyright management information on the Infringing Products.

67.     Additionally, on information and belief, Scifi, at Mr. Webb's direction, has intentionally removed or altered Playboy's copyright information, distributed or imported for distribution copyright management information knowing that the copyright management information has been removed or altered without Playboy's authority, and/or distributed or imported for distribution the Infringing Products knowing that copyright management information has been removed or altered without Playboy's authority, knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal its infringement. For example, on information and belief, Scifi, at Mr. Webb's direction, removed and/or altered the Rabbit Head Design watermark from Playboy's Copyrights, and then distributed or imported for distribution the removed or altered copyright management information.

68.     On information and belief, Scifi is an official distributor of Stellar's Infringing Products. Scifi Cards sells or has sold at least 47 unique sets of Stellar's trading card sets containing Playboy's Trademarks and Copyrights. On information and belief, Scifi sells or has sold at least 30 sets of Stellar's Playboy trading cards that are unlicensed, unapproved, Infringing Products.

69.     On information and belief, Scifi has sold the Infringing Products in California, including at trade shows in at least Palm Springs, San Jose, and Los Angeles.

70.     On information and belief, at all times while Scifi has produced and sold

the Infringing Products, Mr. Webb has been the Chief Executive Officer and/or President of Scifi. On information and belief, Mr. Webb willfully, knowingly, and personally participated in these infringing activities, and/or used Scifi to carry out the deliberate infringement of Playboy's Trademarks and Copyrights. Moreover, on information and belief, Mr. Webb had (and continues to have) the right and ability to supervise the infringing activities, and had (and continues to have) a direct financial interest in such activities.

71.    Exemplary images of Playboy's Copyrights alongside Defendants' Infringing Products are shown below in Illustration 5.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

COMPLAINT

| Illustration 5: Playboy's Copyrights Compared to Defendants' Infringing Products | |
| --- | --- |
| **Images and Descriptions of Playboy's Copyright Registrations** | **Images and Descriptions of Defendants' Infringing Products** |
|  |  |
| Image name: F_15078_PICT_ PM_Aug_Dominique _Jane_AAA2933_w1b Date registered: July 7, 2015 Registration number: VA 1-975-000 | Front of Defendants' Infringing Trading Card of Dominique Jane |
|  |  |

| Illustration 5: Playboy's Copyrights Compared to Defendants' Infringing Products | |
|---|---|
| **Images and Descriptions of Playboy's Copyright Registrations** | **Images and Descriptions of Defendants' Infringing Products** |
| Image name: F_15078_PICT_PM_Aug_Dominique_Jane_AAA3131_w2<br>Date registered: July 7, 2015<br>Registration number: VA 1-975-000 | Back of Defendants' Infringing Trading Card of Dominique Jane |
|  |  |
| Image name: Playboy Playmate Jan/Feb 2015 Stephanie Vovas,F_Vovas_P7_9166s2RET_w1<br>Date registered: Feb. 14, 2015<br>Registration number: VA 1-943-531 | Front of Defendants' Infringing Trading Card of Rachel Mortenson |
|  |  |

| Illustration 5: Playboy's Copyrights Compared to Defendants' Infringing Products | |
| --- | --- |
| **Images and Descriptions of Playboy's Copyright Registrations** | **Images and Descriptions of Defendants' Infringing Products** |
| Image name: Playboy Playmate Jan/Feb 2015 Stephanie Vovas, F_Vovas_P5_9598_w2<br>Date registered: Feb. 14, 2015<br>Registration number: VA 1-943-533 | Back of Defendants' Infringing Trading Card of Rachel Mortenson |
|  |  |
| Image name: 201006_Khrystyana_RyanMichaelKelly_0310<br>Date registered: Nov. 3, 2020<br>Registration number: VA 2-232-669 | Front of Defendants' Infringing Trading Card of Khrystyana |

| Illustration 5: Playboy's Copyrights Compared to Defendants' Infringing Products | |
|---|---|
| **Images and Descriptions of Playboy's Copyright Registrations** | **Images and Descriptions of Defendants' Infringing Products** |
| Image name: 201006_Khrystyana_RyanMichaelKelly_0377<br>Date registered: Nov. 3, 2020<br>Registration number: VA 2-232-669 | Back of Defendants' Infringing Trading Card of Khrystyana |
|  |  |
| Image name: 1907_SOPHIE_highres8_w1<br>Date registered: July 2, 2019<br>Registration number: VA 2-159-393 | Front of Defendants' Infringing Trading Card of Sophie O'Neil |
|  |  |

| Illustration 5: Playboy's Copyrights Compared to Defendants' Infringing Products | |
| --- | --- |
| **Images and Descriptions of Playboy's Copyright Registrations** | **Images and Descriptions of Defendants' Infringing Products** |
| Image name: PM1004741_01_0298_w1<br>Date registered: April 6, 2016<br>Registration number: VA 2-001-016 | Back of Defendants' Infringing Trading Card of Brittany Brousseau |
|  |  |
| Image name: F_1807_20180509_no_ties_management_san_diego_lorena_medina_playboy_july_august_playmate_pictorial_3448_w1<br>Date registered: July 2, 2018<br>Registration number: VA 2-108-649 | Front of Defendants' Infringing Trading Card of Lorena Medina |

72.   Playboy used Playboy's Copyrights extensively and continuously before Defendants began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing into the United States their Infringing Products.

73.   Playboy registered Playboy's Copyrights with the Register of Copyrights pursuant to 17 U.S.C. § 411(a) prior to Defendants' commencement of their infringing

activities.

74. Playboy used Playboy's Trademarks extensively and continuously before Defendants began advertising, promoting, offering to sell, selling, distributing, manufacturing, and/or importing its Infringing Products. Moreover, Playboy's Trademarks became famous and acquired secondary meaning in the United States and in the State of California generally, and in geographic areas in California, before Defendants commenced their unlawful use of Playboy's Trademarks.

75. Defendants have also unlawfully used and continue to unlawfully use Playboy's Trademarks and/or colorable imitations thereof in connection with, *inter alia*, advertising, promoting, offering to sell, selling, and/or distributing Defendants' Infringing Products, and are thereby infringing and diluting Playboy's Trademarks and intentionally trading on Playboy's goodwill.

76. As a result of Defendants' activities related to the Infringing Products, including their use of Playboy's Trademarks and/or colorable imitations thereof, there is a likelihood of confusion between Defendants and their products on the one hand, and Playboy and its products and services on the other hand.

### **FIRST CAUSE OF ACTION**

### **Copyright Infringement under 17 U.S.C. § 501**

### **(Against All Defendants)**

77. Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 76 as though fully set forth herein.

78. Playboy's Copyrights are original works of authorship, embodying copyrightable subject matter, subject to the full protection of the United States copyright laws.

79. Playboy owns the sole and exclusive copyrights in Playboy's Copyrights, including without limitation the right to sue for infringement of Playboy's Copyrights.

80. Playboy registered Playboy's Copyrights with the Register of Copyrights

pursuant to 17 U.S.C. § 411(a) prior to Defendants' commencement of their infringing activities.

81.    Defendants had access to Playboy's Copyrights prior to commencing their infringement, as evidenced by, at least, Defendants' reproduction, distribution, and public display of exact copies of Playboy's Copyrights.

82.    Based on the activities described above, including, for example, copying, reproducing, making, displaying, distributing, using, and/or preparing derivative works of Playboy's Copyrights—and doing so to help advertise, promote, offer for sale, sell, distribute, manufacture, and/or import its Infringing Products—Defendants have directly and/or vicariously infringed and violated Playboy's exclusive rights in Playboy's Copyrights in violation of, at least, 17 U.S.C. §§ 106 and 501.

83.    Defendants' acts of infringement are willful. Defendants' bad faith is evidenced at least by Defendants' direct copying of Playboy's Copyrights and Defendants using these copies to, *inter alia*, advertise, promote, offer for sale, sell, distribute, manufacture, and/or import Defendants' Infringing Products. Defendants' bad faith is further evidenced by Defendants' infringement of Playboy's other rights and Defendants' continuing disregard for Playboy's rights.

84.    Each infringement by Defendants of Playboy's Copyrights constitutes a separate and distinct act of infringement.

85.    Defendants' infringement of Playboy's Copyrights has caused irreparable injury to Playboy.

86.    Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Playboy's actual damages and/or Defendants' profits under 17 U.S.C. § 504(b), or in the alternative, and at Playboy's election, statutory damages under 17 U.S.C. § 504(c), and costs and attorneys' fees at least under 17 U.S.C. § 505.

COMPLAINT

## SECOND CAUSE OF ACTION

## Violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202

### (Against All Defendants)

87.    Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 86 as though fully set forth herein.

88.    Playboy's Copyrights are original works of authorship, embodying copyrightable subject matter, subject to the full protection of the United States copyright laws.

89.    Playboy owns the sole and exclusive copyrights in Playboy's Copyrights.

90.    Defendants included, at least, the phrases "Daydreams," "Sultry Lace," "Hard Bodies," and "Stellar Collectibles" on Playboy's Copyrights.

91.    Defendants knowingly provided copyright management information on the Infringing Products that is false, and/or distributed or imported for distribution copyright management information on the Infringing Products that is false. Defendants provided this false copyright management information with the intent to induce, enable, facilitate, or conceal their infringement.

92.    Defendants also knowingly and intentionally removed or altered Playboy's copyright information, distributed or imported for distribution copyright management information knowing that the copyright management information has been removed or altered without Playboy's authority, and/or distributed or imported for distribution the Infringing Products knowing that copyright management information has been removed or altered without Playboy's authority, knowing or having reasonable grounds to know, that it will induce, enable, facilitate, or conceal their infringement.

93.    As a direct and proximate result of Defendants' DMCA violations, Playboy is entitled to injunctive relief under 17 U.S.C. § 1203(b), and Playboy is also entitled to recover at least Playboy's actual damages and/or Defendants' profits under

17 U.S.C. § 1203(c)(1)-(2), or in the alternative, and at Playboy's election, statutory damages under 17 U.S.C. § 1203(c)(3), and costs and attorneys' fees under 17 U.S.C. § 1203(b).

## THIRD CAUSE OF ACTION

## Trademark Infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114

### (Against All Defendants)

94.     Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 93 as though fully set forth herein.

95.     Based on the activities described above, including, for example, Defendants using Playboy's federally registered trademarks and/or colorable imitations thereof, including at least the trademarks protected by Playboy's Registered Trademarks, in connection with advertising, promoting, offering for sale, selling, distributing, manufacturing, and/or importing the Infringing Products, Defendants have infringed Playboy's Registered Trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114. Defendants' use of Playboy's Registered Trademarks, including colorable imitations thereof, is likely to cause confusion, or to cause mistake, or to deceive.

96.     Defendants' use of Playboy's Registered Trademarks and/or colorable imitations thereof in connection with the Infringing Products has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Registered Trademarks, Playboy's products and services, and Playboy.

97.     On information and belief, Defendants' use of Playboy's Registered Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by Defendants' unlawful use of Playboy's Registered Trademarks in an effort to sell the Infringing Products,

Defendants' infringement of Playboy's other rights, Defendants' knowledge of Playboy's rights, and Defendants' continuing disregard for Playboy's rights.

98.     Playboy is entitled to injunctive relief, and Playboy is entitled to recover at least Defendants' profits, Playboy's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1114(1), 1116, and 1117.

## **FOURTH CAUSE OF ACTION**

### **Trademark Infringement under § 43 of the Lanham Act, 15 U.S.C. § 1125(a)**

### **(Against All Defendants)**

99.     Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 98 as though fully set forth herein.

100.   Based on the activities described above, including, for example, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof, Defendants violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants' use of Playboy's Trademarks and/or colorable imitations thereof, is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Playboy and as to the origin, sponsorship, and/or approval of the Infringing Products, at least by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Playboy.

101.   Playboy's Trademarks are entitled to protection under the Lanham Act. Playboy's Trademarks are inherently distinctive. Playboy has extensively and continuously promoted and used Playboy's Trademarks in the United States. Through that extensive and continuous use, Playboy's Trademarks have become well-known indicators of the origin and quality of Playboy's products and services. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Playboy's Trademarks acquired this secondary meaning before Defendants commenced their unlawful use of Playboy's Trademarks in connection with the Infringing Products.

102.   Defendants' use of Playboy's Trademarks and/or colorable imitations thereof in connection with the Infringing Products has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products and services, and Playboy.

103.   On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by Defendants' unlawful use of Playboy's Trademarks to sell the Infringing Products, Defendants' infringement of Playboy's other rights, Defendants' knowledge of Playboy's rights, and Defendants' continuing disregard for Playboy's rights.

104.   Playboy is entitled to injunctive relief, and Playboy is entitled to recover at least Defendants' profits, Playboy's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1116, 1117, and 1125(a).

## FIFTH CAUSE OF ACTION

## Trademark Dilution under § 43 of the Lanham Act, 15 U.S.C. § 1125(c)

### (Against All Defendants)

105.   Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 104 as though fully set forth herein.

106.   Based on the activities described above, including, for example, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof, Defendants are likely to dilute, have diluted, and continue to dilute Playboy's famous Trademarks in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Defendants' use of Playboy's Trademarks and/or colorable imitations thereof is likely to cause, and has caused, dilution of Playboy's famous Trademarks at least by eroding the public's exclusive identification of Playboy's famous Trademarks with Playboy and Playboy's products and services, by lessening the capacity of Playboy's famous

Trademarks to identify and distinguish Playboy's products and services, and by impairing the distinctiveness of Playboy's famous Trademarks.

107.  Playboy's Trademarks are famous and are entitled to protection under the Lanham Act. Playboy's Trademarks are inherently distinctive. Playboy's Trademarks also have acquired distinctiveness through Playboy's extensive and continuous promotion and use of Playboy's Trademarks in the United States. Through that extensive and continuous use, Playboy's Trademarks have become famous, well-known indicators of the origin and quality of Playboy's products throughout the United States, and are widely recognized by the general consuming public as a designation of the source of Playboy and Playboy's products and services. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Playboy's Trademarks became famous and acquired this secondary meaning before Defendants commenced their unlawful use of Playboy's Trademarks in connection with the Infringing Products.

108.  Defendants' use of Playboy's Trademarks and/or colorable imitations thereof in connection with the Infringing Products has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products and services, and Playboy.

109.  On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by Defendants' unlawful use of Playboy's Trademarks to sell the Infringing Products, Defendants' infringement of Playboy's other rights, Defendants' knowledge of Playboy's rights, and Defendants' continuing disregard for Playboy's rights.

110.  Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Defendants' profits, Playboy's actual damages, enhanced profits and

damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(c), 1116, and 1117.

## SIXTH CAUSE OF ACTION

### Trademark Dilution under California Business & Professions Code § 14247

### (Against All Defendants)

111.   Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 110 as though fully set forth herein.

112.   Based on the activities described above, including, for example, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof, Defendants are likely to dilute, have diluted, and continue to dilute Playboy's Trademarks in violation of § 14247 of the California Business & Professions Code. Defendants' use of Playboy's Trademarks and/or colorable imitations thereof is likely to cause, and has caused, dilution of Playboy's famous Trademarks at least by eroding the public's exclusive identification of Playboy's Trademarks with Playboy, by lessening the capacity of Playboy's famous Trademarks to identify and distinguish Playboy's products and services, and by impairing the distinctiveness of Playboy's famous Trademarks.

113.   Playboy's Trademarks are famous and are entitled to protection under California law. Playboy has extensively and continuously promoted and used its Trademarks in the United States and in the State of California. Through that extensive and continuous use, Playboy's Trademarks have become famous and well-known indicators of the origin and quality of Playboy's products and services in the United States and in the State of California generally, and in geographic areas in California, and Playboy's Trademarks are widely recognized by the public throughout California and in geographic areas in California as designations of the source of Playboy and Playboy's products and services. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace, including in the State of California and in geographic areas in California. Moreover, Playboy's Trademarks became

famous and acquired this secondary meaning before Defendants commenced their unlawful use of Playboy's Trademarks in connection with the Infringing Products.

114.    Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products and services, and Playboy.

115.    On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by Defendants' unlawful use of Playboy's Trademarks to sell the Infringing Products, and by Defendants' continuing disregard for Playboy's rights.

116.    Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Defendants' profits, Playboy's actual damages, enhanced profits and damages, and reasonable attorney fees under at least California Business & Professions Code § 14247.

## SEVENTH CAUSE OF ACTION

## Unfair Competition and False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

### (Against All Defendants)

117.    Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 116 as though fully set forth herein.

118.    The activities described above, including, for example, Defendants' use of Playboy's Trademarks as source designators for Defendants' Infringing Products, constitutes unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a) by creating, and continuing to create, a likelihood of confusion with Playboy's Trademarks.

119.   Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, violate § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and constitute unfair competition and false designation of origin, at least because Defendants have obtained an unfair advantage as compared to Playboy through Defendants' use of Playboy's Trademarks and Playboy's Copyrights, and because such uses are likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of Defendants' Infringing Products, at least by creating the false and misleading impression that its Infringing Products are manufactured by, authorized by, or otherwise associated with Playboy.

120.   Playboy's Trademarks are entitled to protection under the Lanham Act. Playboy's Trademarks are inherently distinctive. Playboy has extensively and continuously promoted and used its Trademarks in the United States. Through that extensive and continuous use, Playboy's Trademarks have become well-known indicators of the origin and quality of Playboy's products. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Playboy's Trademarks acquired this secondary meaning before Defendants commenced its unlawful use of Playboy's Trademarks in connection with the Infringing Products.

121.   On information and belief, Defendants knew of Playboy's Trademarks before Defendants' own adoption and use of Playboy's Trademarks.

122.   Defendants' conduct set forth above is also likely to cause mistake, or to deceive as to the affiliation, connection, or association of defendant with Playboy, or as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of 15 U.S.C. § 1125(a).

123.   Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products and services, and

Playboy.

124.    On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of its Infringing Products to Playboy's Trademarks, and Defendants' continuing disregard for Playboy's rights.

125.    Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Defendants' profits, Playboy's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. §§ 1125(a), 1116, and 1117.

## EIGHTH CAUSE OF ACTION

### Unfair Competition under California Business & Professions Code § 17200, *et seq.*

### (Against All Defendants)

126.    Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 125 as though fully set forth herein.

127.    The activities described above, including, for example, Defendants' use of Playboy's Trademarks as source designators for Defendants' Infringing Products, constitutes unfair competition in violation of California Business & Professions Code § 17200, *et seq.*, by creating, and continuing to create, a likelihood of confusion with Plaintiff's Trademarks.

128.    Defendants' conduct, including its use of Playboy's Trademarks in commerce in connection with the marketing and sale of the Infringing Products, constitute an unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising.

129.    Defendants' conduct set forth above is also likely to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Playboy, or as to the origin, sponsorship, or approval of Defendants' goods and services, in violation of California Business & Professions Code § 17200.

130.   Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products and services, and Playboy.

131.   On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of their Infringing Products to Playboy's Trademarks and Defendants' continuing disregard for Playboy's rights.

132.   Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Defendants' profits, Playboy's actual damages, enhanced damages, costs, and reasonable attorney fees.

### NINTH CAUSE OF ACTION

### Common Law Trademark Infringement

### (Against All Defendants)

133.   Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 132 as though fully set forth herein.

134.   On information and belief, Defendants were aware of Plaintiff's business and Playboy's Trademarks before they engaged in the infringing activities and adopted Playboy's Trademarks as a source designator for the Infringing Products.

135.   Defendants' activities described above, including, for example, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof, in competition with Playboy, constitute common law trademark infringement, at least because Defendants' use of Playboy's Trademarks and/or colorable imitations thereof is likely to cause consumer confusion as to the origin and/or sponsorship/affiliation of the Infringing Products, at least by creating the false and misleading impression

that the Infringing Products are manufactured by, authorized by, or otherwise associated with Playboy.

136.    Playboy's Trademarks are entitled to protection under the common law. Playboy has extensively and continuously promoted and used Playboy's Trademarks in the United States and the State of California. Through that extensive and continuous use, Playboy's Trademarks have become well-known indicators of the origin and quality of Playboy's products. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Playboy's Trademarks acquired this secondary meaning before Defendants commenced their unlawful use of Playboy's Trademarks in connection with the Infringing Products.

137.   Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products, and Playboy.

138.   On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by Defendants' unlawful use of Playboy's Trademarks to sell the Infringing Products, Defendants' infringement of Playboy's other rights, and Defendants' continuing disregard for Playboy's rights.

139.   Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Playboy's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

/ / /

/ / /

/ / /

/ / /

/ / /

# TENTH CAUSE OF ACTION

## Common Law Unfair Competition

### (Against All Defendants)

140.   Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 139 as though fully set forth herein.

141.   Defendants' advertisements, marketing, promotions, offers to sell, sales, distribution, manufacture, and/or importing of the Infringing Products, in competition with Playboy constitute common law unfair competition, at least by palming off/passing off of Defendants' goods, by simulating Playboy's Trademarks in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Defendants' Infringing Products, at least by creating the false and misleading impression that their Infringing Products are manufactured by, authorized by, or otherwise associated with Playboy. Defendants have also interfered with Playboy's business.

142.   Playboy's Trademarks are entitled to protection under the common law. Playboy's Trademarks are inherently distinctive. Playboy has extensively and continuously promoted and used Playboy's Trademarks for years in the United States and the State of California. Through that extensive and continuous use, Playboy's Trademarks have become well-known indicators of the origin and quality of Playboy's products. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Playboy's Trademarks acquired this secondary meaning before Defendants commenced their unlawful use of Playboy's Trademarks in connection with its Infringing Products.

143.   Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for

quality associated with Playboy's Trademarks, Playboy's products and services, and Playboy.

144. On information and belief, Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of their Infringing Products to Playboy's Trademarks, and Defendants' continuing disregard for Playboy's rights.

145. Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Playboy's damages, Defendants' profits, punitive damages, costs, and reasonable attorney fees.

## **ELEVENTH CAUSE OF ACTION**

### **Unjust Enrichment**

### **(Against All Defendants)**

146. Playboy realleges and incorporates the allegations set forth in paragraphs 1 through 145 as though fully set forth herein.

147. Defendants' advertisements, promotions, offers to sell, sales, distribution, manufacture, and/or importing of its Infringing Products, in competition with Playboy, constitute unjust enrichment, at least because Defendants have wrongfully obtained benefits at Playboy's expense. Defendants have also, *inter alia*, operated with an undue advantage. As a result of Defendants' actions as stated herein, Defendants have been unjustly enriched.

148. Playboy created the products covered by Playboy's Trademarks through extensive time, labor, effort, skill, and money. Defendants have wrongfully used and are wrongfully using Playboy's Trademarks and/or colorable imitations thereof in competition with Playboy, and have gained and are gaining a wrongful benefit by undue advantage through such use. Defendants have not been burdened with the expenses incurred by Playboy, yet Defendants are obtaining the resulting benefits for their own business and products.

149.    Playboy's Trademarks are entitled to protection under the common law. Playboy's Trademarks are inherently distinctive. Playboy has extensively and continuously promoted and used Playboy's Trademarks for years in the United States and the State of California. Through that extensive and continuous use, Playboy's Trademarks have become well-known indicators of the origin and quality of Playboy's products and services. Playboy's Trademarks have also acquired substantial secondary meaning in the marketplace. Moreover, Playboy's Trademarks acquired this secondary meaning before Defendants commenced their unlawful use of Playboy's Trademarks and colorable imitations thereof in connection with their Infringing Products.

150.    Defendants' use of Playboy's Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to Playboy for which Playboy has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Playboy's Trademarks, Playboy's products and services, and Playboy. Playboy accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment. Defendants have wrongfully obtained and are wrongfully obtaining a benefit at Playboy's expense by taking undue advantage and free-riding on Playboy's efforts and investments, and enjoying the benefits of Playboy's hard-earned goodwill and reputation. Defendants have accepted and retained the benefit of the unjust enrichment from their wrongful conduct. There is no express, written contract between Plaintiff and any of the Defendants that would allow for any Defendant to retain the benefit of the unjust enrichment from its wrongful conduct as described herein.

151.    On information and belief, Defendants' unjust enrichment at Playboy's expense has been intentional, willful, and malicious. Defendants' bad faith is evidenced at least by the similarity of their Infringing Products to Playboy's Trademarks, and Defendants' continuing disregard for Playboy's rights.

152.   Playboy is entitled to injunctive relief, and Playboy is also entitled to recover at least Defendants' profits.

## **Demand for Jury Trial**

Playboy hereby demands a jury trial on all issues so triable.

## **Relief Sought**

WHEREFORE, Playboy respectfully prays for:

1.   Judgment that Defendants have (i) infringed Playboy's Copyrights in violation of § 501 of Title 17 in the United States Code; (ii) provided false copyright management information and/or removed or altered copyright management information in violation of § 1202 of Title 17 in the United States Code; (iii) infringed Playboy's Registered Trademarks in violation of § 1114(1) of Title 15 in the United States Code; (iv) infringed Playboy's Trademarks in violation of § 1125(a) of Title 15 in the United States Code; (v) diluted Playboy's Trademarks in violation of § 1125(c) of Title 15 in the United States Code; (vi) diluted Playboy's Trademarks in violation of California Business & Professions Code § 14247; (vii) engaged in unfair competition and false designation of origin in violation of § 1125(a) of Title 15 in the United States Code; (viii) engaged in unfair competition in violation of California Business & Professions Code § 17200; (ix) violated Playboy's common law rights in Playboy's Trademarks; (x) engaged in common law unfair competition; (xi) been unjustly enriched at Playboy's expense, and that all of these wrongful activities by Defendants were willful;

2.   An injunction against further infringement and dilution of Playboy's Trademarks, further acts of unfair competition and unjust enrichment, and further infringement of Playboy's Copyrights by Defendants, and each of their agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert with any of them, including at least from selling, offering to sell, distributing, manufacturing, importing, or advertising the Infringing Products, or any other products that use a copy, reproduction, or colorable imitation of Playboy's

Trademarks, and/or Copyrights, pursuant to at least 15 U.S.C. § 1116, 17 U.S.C. § 502, and California Business & Professions Code §§ 14247, 17200;

3.     An Order directing Defendants to recall all Infringing Products sold and/or distributed and provide a full refund for all recalled Infringing Products;

4.     An Order directing the destruction of (i) all Infringing Products, including all recalled Infringing Products, (ii) any other products that use a copy, reproduction, or colorable imitation of Playboy's Trademarks or that infringe Playboy's Copyrights in Defendants' possession or control, (iii) all plates, molds, and other means of making the Infringing Products in Defendants' possession, custody, or control, and (iv) all advertising materials related to the Infringing Products in Defendants' possession, custody, or control, including on the Internet, pursuant to at least 15 U.S.C. § 1118;

5.     An Order directing Defendants to publish a public notice providing proper attribution of Playboy's Trademarks and Copyrights to Playboy, and to provide a copy of this notice to all customers, distributors, and/or others from whom the Infringing Products are recalled;

6.     An Order barring importation of the Infringing Products and/or colorable imitations thereof into the United States, and barring entry of the Infringing Products and/or colorable imitations thereof into any customhouse of the United States, pursuant to at least 15 U.S.C. § 1125(b);

7.     An award of Defendants' profits, Playboy's actual damages, enhanced damages, exemplary damages, costs, prejudgment and post judgment interest, and reasonable attorney fees pursuant to at least 15 U.S.C. §§ 1114(1), 1125(a), 1125(c), 1116, and 1117 and the California Business & Professions Code;

8.     An award of Playboy's actual damages and/or Defendants' profits, or in the alternative an award of statutory damages for willful infringement up to $150,000 for each infringement of each photograph comprising Playboy's Copyrights, an award

of statutory damages up to $25,000 for each violation of 17 U.S.C. § 1202, and attorneys' fees and costs pursuant to 17 U.S.C. §§ 504(b, c), 505, and 1203; and

9.     Such other and further relief as this Court deems just and proper.

DATED:  July 18, 2024

FROST LLP

By: _____

CHRISTOPHER FROST
LAWRENCE J. H. LIU
Attorneys for PLAYBOY ENTERPRISES
INTERNATIONAL, INC.

## **EXHIBITS**

| **Exhibit** | **Title** |
|---|---|
| 1 | Chart of Playboy's Registered Trademarks |
| 2 | U.S. Trademark Registration No. 5,423,595 |
| 3 | U.S. Trademark Registration No. 4,973,564 |
| 4 | U.S. Trademark Registration No. 6,901,231 |
| 5 | U.S. Trademark Registration No. 3,749,284 |
| 6 | U.S. Trademark Registration No. 4,280,121 |
| 7 | U.S. Trademark Registration No. 3,959,511 |
| 8 | U.S. Trademark Registration No. 874,451 |
| 9 | U.S. Trademark Registration No. 689,431 |
| 10 | U.S. Trademark Registration No. 645,386 |
| 11 | U.S. Trademark Registration No. 755,301 |
| 12 | U.S. Trademark Registration No. 791,734 |
| 13 | U.S. Trademark Registration No. 4,560,637 |
| 14 | U.S. Trademark Registration No. 4,475,537 |
| 15 | U.S. Trademark Registration No. 4,886,163 |
| 16 | U.S. Trademark Registration No. 5,182,173 |
| 17 | U.S. Trademark Registration No. 5,138,230 |
| 18 | U.S. Trademark Registration No. 5,392,230 |
| 19 | U.S. Trademark Registration No. 5,932,223 |
| 20 | U.S. Trademark Registration No. 5,210,800 |
| 21 | U.S. Trademark Registration No. 6,042,869 |
| 22 | U.S. Trademark Registration No. 5,991,809 |

| 23 | U.S. Trademark Registration No. 5,997,840 |
|----|-------------------------------------------|
| 24 | U.S. Trademark Registration No. 5,945,210 |
| 25 | U.S. Trademark Registration No. 5,938,488 |
| 26 | U.S. Trademark Registration No. 1,328,611 |
| 27 | U.S. Trademark Registration No. 1,320,822 |
| 28 | U.S. Trademark Registration No. 2,921,658 |
| 29 | U.S. Trademark Registration No. 3,115,167 |
| 30 | U.S. Trademark Registration No. 3,406,607 |
| 31 | U.S. Trademark Registration No. 3,624,653 |
| 32 | U.S. Trademark Registration No. 3,140,250 |
| 33 | U.S. Trademark Registration No. 3,242,491 |
| 34 | U.S. Trademark Registration No. 3,332,171 |
| 35 | U.S. Trademark Registration No. 600,018 |
| 36 | U.S. Trademark Registration No. 676,726 |
| 37 | U.S. Trademark Registration No. 1,040,491 |
| 38 | U.S. Trademark Registration No. 871,552 |
| 39 | U.S. Trademark Registration No. 2,635,849 |
| 40 | U.S. Trademark Registration No. 2,412,958 |
| 41 | U.S. Trademark Registration No. 2,445,179 |
| 42 | U.S. Trademark Registration No. 2,632,523 |
| 43 | U.S. Trademark Registration No. 2,469,441 |
| 44 | U.S. Trademark Registration No. 2,719,886 |
| 45 | U.S. Trademark Registration No. 2,978,139 |
| 46 | U.S. Trademark Registration No. 3,370,451 |

| 47 | U.S. Trademark Registration No. 2,107,294 |
| 48 | U.S. Trademark Registration No. 3,375,828 |
| 49 | U.S. Trademark Registration No. 4,871,282 |
| 50 | U.S. Trademark Registration No. 5,997,751 |
| 51 | U.S. Trademark Registration No. 5,317,383 |
| 52 | U.S. Trademark Registration No. 5,301,904 |
| 53 | U.S. Trademark Registration No. 984,548 |
| 54 | U.S. Trademark Registration No. 1,908,471 |
| 55 | U.S. Trademark Registration No. 2,260,234 |
| 56 | U.S. Trademark Registration No. 5,822,553 |
| 57 | U.S. Trademark Registration No. 6,034,692 |
| 58 | U.S. Trademark Registration No. 6,034,691 |
| 59 | U.S. Trademark Registration No. 4,380,765 |
| 60 | U.S. Trademark Registration No. 4,495,246 |
| 61 | U.S. Trademark Registration No. 4,384,747 |
| 62 | U.S. Trademark Registration No. 5,638,285 |
| 63 | U.S. Trademark Registration No. 2,190,905 |
| 64 | U.S. Trademark Registration No. 3,341,456 |
| 65 | U.S. Trademark Registration No. 661,391 |
| 66 | U.S. Trademark Registration No. 1,691,469 |
| 67 | U.S. Trademark Registration No. 4,983,730 |
| 68 | U.S. Trademark Registration No. 6,620,150 |
| 69 | U.S. Trademark Registration No. 4,361,827 |
| 70 | U.S. Trademark Registration No. 5,624,254 |

| 71 | U.S. Trademark Registration No. 4,315,825 |
|----|-------------------------------------------|
| 72 | U.S. Trademark Registration No. 4,280,122 |
| 73 | U.S. Trademark Registration No. 3,963,330 |
| 74 | U.S. Trademark Registration No. 871,553 |
| 75 | U.S. Trademark Registration No. 679,997 |
| 76 | U.S. Trademark Registration No. 728,889 |
| 77 | U.S. Trademark Registration No. 873,370 |
| 78 | U.S. Trademark Registration No. 759,207 |
| 79 | U.S. Trademark Registration No. 784,504 |
| 80 | U.S. Trademark Registration No. 791,333 |
| 81 | U.S. Trademark Registration No. 4,813,069 |
| 82 | U.S. Trademark Registration No. 4,889,760 |
| 83 | U.S. Trademark Registration No. 5,401,970 |
| 84 | U.S. Trademark Registration No. 5,350,998 |
| 85 | U.S. Trademark Registration No. 5,530,694 |
| 86 | U.S. Trademark Registration No. 6,185,419 |
| 87 | U.S. Trademark Registration No. 6,273,085 |
| 88 | U.S. Trademark Registration No. 5,552,179 |
| 89 | U.S. Trademark Registration No. 6,142,438 |
| 90 | U.S. Trademark Registration No. 6,059,387 |
| 91 | U.S. Trademark Registration No. 6,004,261 |
| 92 | U.S. Trademark Registration No. 5,638,684 |
| 93 | U.S. Trademark Registration No. 5,482,507 |
| 94 | U.S. Trademark Registration No. 5,938,489 |

| 95 | U.S. Trademark Registration No. 3,012,203 |
| 96 | U.S. Trademark Registration No. 3,112,931 |
| 97 | U.S. Trademark Registration No. 3,308,169 |
| 98 | U.S. Trademark Registration No. 3,406,608 |
| 99 | U.S. Trademark Registration No. 3,624,654 |
| 100 | U.S. Trademark Registration No. 643,926 |
| 101 | U.S. Trademark Registration No. 3,332,173 |
| 102 | U.S. Trademark Registration No. 3,194,099 |
| 103 | U.S. Trademark Registration No. 1,058,294 |
| 104 | U.S. Trademark Registration No. 761,793 |
| 105 | U.S. Trademark Registration No. 2,556,438 |
| 106 | U.S. Trademark Registration No. 2,709,637 |
| 107 | U.S. Trademark Registration No. 2,434,256 |
| 108 | U.S. Trademark Registration No. 2,666,917 |
| 109 | U.S. Trademark Registration No. 2,719,885 |
| 110 | U.S. Trademark Registration No. 2,759,728 |
| 111 | U.S. Trademark Registration No. 2,802,023 |
| 112 | U.S. Trademark Registration No. 2,848,639 |
| 113 | U.S. Trademark Registration No. 2,839,937 |
| 114 | U.S. Trademark Registration No. 2,107,307 |
| 115 | U.S. Trademark Registration No. 2,177,521 |
| 116 | U.S. Trademark Registration No. 3,690,340 |
| 117 | U.S. Trademark Registration No. 3,375,827 |
| 118 | U.S. Trademark Registration No. 3,375,883 |

| 119 | U.S. Trademark Registration No. 5,182,526 |
| 120 | U.S. Trademark Registration No. 3,194,120 |
| 121 | U.S. Trademark Registration No. 6,620,151 |
| 122 | U.S. Trademark Registration No. 721,987 |
| 123 | U.S. Trademark Registration No. 2,191,054 |
| 124 | U.S. Trademark Registration No. 1,462,762 |
| 125 | U.S. Trademark Registration No. 5,311,786 |
| 126 | U.S. Trademark Registration No. 3,406,581 |
| 127 | U.S. Trademark Registration No. 3,115,166 |
| 128 | U.S. Trademark Registration No. 4,019,840 |
| 129 | U.S. Trademark Registration No. 2,663,899 |
| 130 | U.S. Trademark Registration No. 3,388,248 |
| 131 | U.S. Trademark Registration No. 3,388,327 |
| 132 | U.S. Trademark Registration No. 2,114,146 |
| 133 | U.S. Trademark Registration No. 2,275,173 |
| 134 | U.S. Trademark Registration No. 5,237,750 |
| 135 | U.S. Copyright Registration No. VA 1-975-000 |
| 136 | U.S. Copyright Registration No. VA 1-943-531 |
| 137 | U.S. Copyright Registration No. VA 1-943-533 |
| 138 | U.S. Copyright Registration No. VA 2-232-669 |
| 139 | U.S. Copyright Registration No. VA 2-159-393 |
| 140 | U.S. Copyright Registration No. VA 2-001-016 |
| 141 | U.S. Copyright Registration No. VA 2-108-649 |
| 142 | Captures of Portions of Xandebay Website and Social Media Accounts |

| 143 | Captures of Portions of Scifi Website and Social Media Accounts |